IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KENNETH TAYLOR,** | * |
| Plaintiff, | * |
| v. | * |
| | * Civil No. **21-cv-1469-PJM** |
| **XAVIER BECERRA,** | * |
| Defendant. | * |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

On June 11, 2021, Dr. Kenneth Taylor ("Taylor"), a former employee of the United States Department of Health and Human Services ("HHS"), brought this action against Dr. Xavier Becerra (Defendant), Secretary of HHS, in which he makes various employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination Employment Act of 1967, 29 U.S.C. § 633a, *et seq.* ("ADEA"). Compl. ¶ 1, ECF No. 1. Defendant has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment as to all claims. ECF No. 18. On August 17, 2022, the Court held a hearing on the Motion and ordered Taylor to produce a Bill of Particulars in support of each count, indicating which events set forth in the Complaint support each of his alleged causes of action. *See* ECF No. 40 at 3. On October 17, 2022, Taylor filed his Bill of Particulars. ECF No. 43. Defendant has responded, ECF No. 46, and Taylor has replied, ECF No. 49. On August 17, 2023, the Court held a second hearing on the Motion. For the reasons that follow, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, treated as a

1

Motion for Summary Judgment, is now **GRANTED**. Specifically, Defendant's Motion for Summary Judgment is **GRANTED**, its Motion to Dismiss is **MOOT**.

## II. BACKGROUND

Dr. Xavier Becerra is the Secretary of HHS. HHS encompasses many Government agencies, including the Food and Drug Administration ("FDA") and the National Institute of Health ("NIH"). Dr. Kenneth Taylor is a 59-year-old white male. *See* ECF No. 18-3 at 1. He has worked for HHS for nearly two decades. ECF No. 1, Compl. ¶ 27. Beginning February 9, 2014, Taylor held the position of Supervisory Chemist (GS-15) at the FDA's Center for Tobacco Products ("CTP"), Office of Science ("OS"), Division of Product Science ("DPS"). *Id.* at ¶ 28. He also served as the Chemistry Branch Chief for the CTP. He states that he was the oldest and longest tenured Branch Chief in DPS. *Id.* at ¶ 29. On June 20, 2021, Taylor transferred within the FDA to the Center for Veterinary Medicine. ECF No. 18-1 at 2.

Beginning in 2017, Taylor's immediate supervisor was Dr. Matthew Walters ("Walters") who is currently Deputy Division Director of DPS. Compl. ¶ 31. Taylor's second-line supervisor in 2017 was DPS Director Dr. Colleen Rogers ("Rogers"). *Id.* at ¶ 32. Before that, from approximately 2014 to 2017, Taylor's immediate supervisor was Matthew Holman ("Holman"). *Id.* at ¶ 30.

Taylor alleges that, essentially at the relevant times, the "workplace culture at OS/DPS [has been] dominated by younger and/or female employees who are expressly favored and hired and/or advanced for leadership positions at significantly higher rates than similarly situated older male workers, who are often passed over, ignored, or otherwise treated disparately." *Id.* at ¶ 33. His lawsuit alleges that he was the victim of such discrimination.

## III. TAYLOR'S EEO COMPLAINTS

Between February 2018 and October 2020, Taylor filed five Equal Employment Opportunity ("EEO") Complaints with HHS-EEO that, at least in part, form the basis of his claims here.[1] *See* ECF No. 18-1 at 7. They are briefly described as follows.

### A. EEO Complaint 1: March 23, 2018 (HHS-FDACTP-044-18)

On March 23, 2018, Taylor filed an EEO Complaint alleging discrimination and harassment on the bases of age and retaliation. According to the Report of Investigation ("ROI"), Taylor complained of the following:

1. On February 13, 2018, Matthew Walters sent Taylor an intimidating and evasive email regarding Taylor's performance appraisal.
2. On February 6, 2018, Walters deleted comments from Taylor's mid-year Performance Management Appraisal Program ("PMAP") review, reused statements from a prior PMAP made by another supervisor, excluded and did not consider Taylor's accomplishments for the rating period, and applied the 90-day rule differently.
3. On February 6, 2018, Walters gave Taylor a lower performance rating on his PMAP which contained some unfavorable narrative statements that were misleading, inaccurate, deceptive, and/or inconsistent with the established performance standards.
4. On June 5, 2018, Walters continued to harass Taylor by making accusations and by attempting to create unnecessary work for him. Walters' actions were due to Taylor's age and were taken in retaliation for Taylor's pending Complaint.
5. On June 18, 2018, Walters issued a Memorandum of Counseling to Taylor for unprofessional and discourteous conduct in the workplace.

*See* ECF No. 18-3 at 2.

### B. EEO Complaint 2 – June 27, 2018 (HHS-FDACTP101-18-F)

On June 27, 2018, Taylor filed an EEO Complaint that alleged discrimination and harassment on the bases of age, gender, and retaliation. The ROI states that he alleged the following:

---

[1] Taylor also filed another lawsuit against HHS in 2013 that alleged age discrimination and retaliation. *See Taylor v. Sebelius*, 13-cv-1998 (D. Md. 2013).

3

1. On May 9, 2018, the Responsible Management Official (RMO), Dr. Rogers, attempted to lure Taylor into a voluntary reassignment to another position which would have caused him professional harm.
2. The RMO delegated or assigned Technical Project Lead duties and responsibilities to Taylor and not to the female engineering branch chiefs.

*See* ECF No. 18-6 at 4, 9. Taylor requested an administrative hearing on EEO Complaints 1 and 2, and the EEOC consolidated the two Complaints. *See* ECF No. 18-1 at 9. In March 2020, Taylor withdrew his hearing requests. *Id.* No final administrative decision ("FAD") ever issued. *Id.*

### C. EEO Complaint 3 – December 19, 2019 (HHS-FDACTP-004-20)

On December 19, 2019, Taylor filed another EEO Complaint that alleged discrimination and harassment on the bases of age, gender, and retaliation. The ROI states that the Agency accepted for investigation the following claims made by Taylor:

1. On September 4, 2019, Taylor was informed that he had not been selected as Director of the Tobacco Regulatory Science Program at NIH. The Responsible Management Official, Dr. Matthew Holman, was on the interview panel, and adversely affected Taylor's candidacy for the position.
2. On September 4, 2019, Taylor was excluded from a meeting with Hassink (Team Lead), Walters, and Holman.
4. On September 10, 2019, Hassink came to Taylor to assist Taylor with a poster presentation for FDA Standards Day. Despite Taylor's contributions, he was not named as a contributor to the poster, and his involvement was not acknowledged.
5. On September 23, 2019, Taylor was given an assignment with a deadline that was unattainable.
8. On September 27, 2019, Taylor learned that he was denied approximately 1.75 hours of compensatory time.

*See* ECF No. 18-9 at 2. EEO Complaint 3 included several other allegations that the Agency dismissed. *See id.* at 20–22; *see also* ECF No. 18-1 at 9–10. Taylor did not request an administrative hearing. ECF No. 18-1 at 10. Defendant states that the Agency never issued a FAD, *id.*, though Taylor claims that one issued on March 17, 2021, Compl. ¶ 25. But Taylor has not provided a copy of a FAD with respect to this EEO Complaint.

4

**D.     EEO Complaint 4 – March 28, 2020 (HHS-NIH-OD-035-20)**

On March 28, 2023, Taylor filed an EEO Complaint that alleged discrimination on the basis of gender. The Agency accepted for investigation the following claim made by Taylor:

1. On December 6, 2019, Taylor learned that a female was selected over two male candidates, including him, for the position of Director, Tobacco Regulatory Science Program, in the Office of Disease Prevention, NIH.

*See* ECF No. 18-16 at 2. Taylor did not request an administrative hearing. ECF No. 18-1 at 10. The Agency issued a FAD on March 19, 2020, dismissing the matter on the ground that Taylor had failed to prove that the Agency's reason for its selection was pretext for discrimination or that Taylor's gender had any impact on the selection process. *See* ECF No. 18-20.

**E.     EEO Complaint 5 – October 12, 2020 (HHS-FDACTP-114-20)**

On October 12, 2020, Taylor filed an EEO Complaint that alleged discrimination, harassment, and retaliation on the bases of age and gender. The ROI states that the Agency accepted for investigation the following claims made by Taylor:

1. On July 30, 2020, Walters informed Taylor of a job posting that would convert all current Team Leads to supervisors, and that Taylor should advise his current team lead, Hassink, about the posting so that Hassink could update his resume.
2. On August 21, 2020, Walters sent another email asking Taylor to encourage Hassink to prepare his documents and make sure to submit the correct SF-50 for the forthcoming job announcement.
3. On August 31, 2020, during a meeting with Walters, Rebecca Martin, and Tanya Dougans, Taylor was informed that he would need to sign a document for the supervisory team lead position on his Branch, even though he was not involved in the development and planning of the position. He was pressured to sign the document on at least four separate occasions.
4. On September 3, 2020, Walters copied Taylor on an email to Hassink and others informing him of the job announcement for the supervisory team lead position.
5. On September 4, 2020, Walters copied Taylor on an email to Hassink and others providing additional instruction for submitting the application and resending the internet link to the job announcement.
6. On September 21, 2020, Walters sent an email to Taylor asking him to confirm that he had no concerns with selecting Hassink to be a supervisory team lead chemist on his Branch.

7. On September 23, 2020, Walters informed Taylor that he would select Hassink to be a supervisory chemist on his Branch, even though Taylor had not responded to Walters' September 21, 2020 email.

*See* 18-21 at 2. Taylor did not request an administrative hearing and the Agency did not issue a FAD. ECF No. 18-1 at 11.

## IV. PRESENT LITIGATION

Taylor filed suit in this Court on June 11, 2021. ECF No. 1. On April 14, 2022, Defendant filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 18. Taylor has responded, ECF No. 29, and Defendant has replied, ECF No. 34. While the case has not yet proceeded to discovery, Defendant has attached lengthy exhibits, including the ROIs from the five EEO Complaints, the FAD of EEO Complaint 4, the "SF 50" form that approved Taylor's transfer from CFSAN to the Center for Veterinary Medicine on June 30, 2021, and the ROI from Taylor's EEO Complaint in 2011 that led to prior litigation[2] in this District. Taylor has likewise attached several exhibits to his submissions and dedicated a good deal of space in his Opposition Brief to arguing the merits of his claims. *See* ECF No. 29.

Taylor's Complaint asserts six causes of action, and as to each count, he has incorporated all preceding paragraphs by reference without detailing which purported adverse actions or protected activities comprise the backbone of each count. As a result, at the August 17, 2022 Hearing, the Court ordered Taylor to produce a Bill of Particulars. The Court treats Taylor's Bill of Particulars here as an extension of his Complaint and organizes its analysis of the six causes of action that it understands Taylor is maintaining accordingly.

---

[2] *Taylor v. Sebelius*, 13-cv-1998 (D. Md. 2013).

6

### A. Counts One and Two: Retaliation – Title VII and ADEA

Taylor complains of the same purportedly protected activities with respect to each of the above claims, i.e., the filing of his prior lawsuit against HHS and his first two EEO complaints. He alleges the following adverse actions in support of his claims: (1) that Dr. Holman failed to recuse himself as a non-voting member on the NIH Selection Committee for the position of director of the TRSP, which Taylor alleges led to Defendant not selecting him for the position; (2) that Taylor was denied approximately 1.75 hours of compensatory time; and (3) that Walters proposed to promote some reviewers of Taylor's direct reports and Hassink was actually promoted.

### B. Count Three: Gender Discrimination – Title VII

Taylor argues that he was not selected for a position at the NIH due to discrimination based on sex. Specifically, he alleges that the NIH prefers to hire women and that Dr. Meissner, a female, who was selected over him, was less qualified for the position.

### C. Count Four: Age Discrimination – ADEA

Taylor argues that the branch restructuring that culminated in Dr. Hassink's promotion and assumption of certain supervisory duties amounted to a de facto demotion of Taylor and constituted discrimination against him based on his age.

### D. Counts Five and Six: Hostile Working Environment – Title VII/ADEA

Taylor relies on all grievances contained within each of his EEO Complaints as evidence of his hostile work environment claims. *See* ECF No. 43 at 17–18. He claims that "[a]ll the allegations supporting [these] claims are for non-discrete actions that, cumulatively, created a hostile work environment." *Id.* at 17.

Taylor seeks economic damages, liquidated damages, attorney's fees and costs, pre- and post-judgment interest, and other appropriate relief. Compl. ¶ 190.

## V. STANDARD OF REVIEW

### A. Converting the Motion to Dismiss to One for Summary Judgment pursuant to Rule 12(d)

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, Rule 12(d) permits courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Reasonable opportunity consists of two requirements: (1) the nonmoving party must have some notice that the court will be treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). "The nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (finding summary judgment appropriate where the non-moving party failed to file an affidavit but argued in a brief that discovery was needed).

Here, Defendant put Taylor on notice of its intention to convert its Motion to Dismiss to a Motion for Summary Judgment, both by stating the standard for conversion under Rule 12(d) and by attaching nine exhibits to its Motion to Dismiss. *See* ECF No. 18-1 at 16; ECF No. 18. Taylor's decision to attach his own exhibits to his Reply brief, as well as his arguments that rely on Defendant's exhibits, made clear that conversion under Rule 12(d) was a possibility. *See, e.g.*, ECF No. 29 at 3. All the while, it may be noted, Taylor has chosen not to file a Rule 56(d) affidavit to request discovery. Further, the extensive factual record developed by the five ROIs clearly establishes that discovery is unnecessary. Accordingly, the Court will treat Defendant's Motion as a Motion for Summary Judgment.

### B. Summary Judgment under Rule 12(d)

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The alleged factual dispute must be genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In reviewing a motion for summary judgment, the court views the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party, *i.e.*, Taylor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The Court must "refrain from 'weigh[ing] the evidence or mak[ing] credibility determinations'" at this stage. *Lee*, 863 F.3d at 327 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)).

### C. *McDonnell Douglas* Framework under ADEA and Title VII

A plaintiff can establish discriminatory intent by presenting direct evidence of discriminatory animus, or through the indirect burden-shifting proof scheme set forth

in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Since Taylor has offered no direct evidence of discriminatory animus, this case is properly analyzed under the three-part *McDonnell Douglas* framework.

To prove disparate treatment under either Title VII or the ADEA, the plaintiff has the burden of establishing discriminatory intent.

Under *McDonnell Douglas,* to create an inference of either discrimination or retaliation, the plaintiff must first establish a prima facie case of discrimination. *Id.* "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010); *see Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir. 2004) (espousing the same standard for ADEA discrimination under the *McDonnell Douglass* proof scheme). The elements of a prima facie case for retaliation under both Title VII and ADEA are "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman,* 626 F.3d at 190 (Title VII); s*ee Buchhagen v. ICF Int'l, Inc.,* 650 Fed. App'x 824, 828 (4th Cir. 2016) (ADEA).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination or retaliation arises, which the employer may rebut by articulating a legitimate non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affs. v. Burdine,* 450 U.S. 248, 253 (1981). The employer's burden is merely one of production, not persuasion. *Id.* at 255–56. If the employer meets this burden, the presumption raised by the plaintiff's prima facie case is rebutted and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255.

10

At that juncture, the plaintiff would then have to prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id.* at 253; *see also Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989). The ultimate burden of showing that the employer intentionally discriminated or retaliated against him at all times remains with the plaintiff. *See Burdine,* 450 U.S. at 253. Even if the plaintiff demonstrates a prima facie case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Co-op., Inc.,* 148 F.3d 413, 416–17 (4th Cir. 1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

To constitute an adverse employment action in the context of a discrimination claim, an employer's "conduct must materially alter the terms, conditions, or benefits of employment." *Kelly v. Giant of Maryland LLC,* No. 8:18-cv-02495, 2019 WL 2502289, at *5 (D. Md. June 17, 2019). Examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999). In the retaliation context, an adverse action means conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," and which caused injury or harm. *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–68 (2006) (internal quotation marks and citations omitted).

### D.     Hostile Work Environment

A prima facie case of hostile work environment requires that the plaintiff show (1) conduct, (2) based on plaintiff's protected characteristic, such as race, national origin, age, or sex, that is (3) sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere, and 4) imputable to the employer. *See Karol v. Bd. of Educ. of Calvert Cnty.*, No. 8:17-cv-0781, 2017 WL 6555659, at *3 (D. Md. Dec. 22, 2017) (Title VII, sex); *Laurent-Workman v. Wormuth*, 54 F.4th 201 (4th Cir. 2022) (Title VII, race/national origin), *Berger v. Baltimore County*, No. 22-cv-00064, 2022 WL 2116867 (D. Md. June 13, 2022) (hostile work environment).

In weighing whether alleged conduct is sufficiently "severe or pervasive," courts look to all the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether [the conduct] is physically threatening or humiliating, or a mere offensive utterance; and whether [the conduct] unreasonably interferes with an employee's work performance." *See Harris v. Forklift Sys.*, 510 U.S. 17, 17, 23 (1993). "[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality [that] conflict with one's supervisor" are simply not enough. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and citations omitted). Ordinary personnel decisions or grievances as to a supervisor's management style also do not constitute a hostile work environment. *Hemphill v. ARAMARK Corp.*, No. 1:12-cv-01584, 2014 WL 1248296, at *14 (D. Md. Mar. 25, 2014), aff'd, 582 F. App'x 151 (4th Cir. 2014).

For retaliatory hostile work environment claims, the Fourth Circuit has explained that the plaintiff must allege that the retaliatory conduct "(1) was unwelcome, (2) was sufficiently severe

12

or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Laurent-Workman*, 54 F.4th 201, 218 (4th Cir. 2022).

That said, the Fourth Circuit in *Laurent-Workman* cautioned that this alternative standard does not permit a plaintiff to state a claim by simply compiling a list of workplace grievances:

> While retaliation claims are not limited to actions that alter the terms and conditions of employment, severity and pervasiveness are useful units of measurement to determine whether claimed harassment is actionable. After all, the standards for judging hostility must be sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, that all employees experience. The severity and frequency of hostility are important factors to consider when determining whether the circumstances would dissuade a reasonable employee from opposing discrimination, just as they are for assessing substantive hostile work environments.

*Id.* at 217 (internal quotation marks and citations omitted).

## VI. DISCUSSION

### A. Taylor has not demonstrated a prima facie case of retaliation or discrimination based on his non-selection for a position.

Taylor does not contest that he has alleged neither direct nor indirect evidence of discrimination or retaliation. Nor does he contest that this lack of evidence means he may only state a claim under the *McDonnell Douglas* burden-shifting framework.

Each of Taylor's three retaliation and discrimination claims, premised on Defendant not selecting him as Director of NIH's Tobacco Regulatory Science Program, fails at both the first and third steps of the *McDonnell Douglas* framework. Each claim fails to demonstrate that Defendant's reasons for hiring a different candidate, Dr. Meissner, were pretextual.

First and foremost, Taylor has not shown that his non-selection constitutes an adverse action. He cannot create a cause of action simply by claiming that he is "uniquely qualified,"

13

touting his own résumé, and arguing that the skills he possesses were more valuable to the position in question than those that the selectee possessed. *See* ECF No. 29 at 27. Even the most generous reading of Taylor's rebuttal to EEO Complaint 3, which he attached to his Opposition, includes at most limited discussion of the selectee Dr. Meissner's qualifications. *See* ECF No. 29-3. Instead, Taylor has dedicated the better part of his rebuttal to disputing the criticism he received from the Selection Committee, arguing that the Selection Committee improperly weighted selection criteria. *See id.*

What space Taylor does dedicate to Dr. Meissner's qualifications nit-picks her lack of formal education, focusing specifically on prevention science. *Id.* at 2–3. Yet Taylor acknowledges that Dr. Meissner gained experience in prevention science both from a prior position she held in cancer prevention at NIH and from her experience as Director of TSRP before the position was transitioned from GS-15 to Title 42. *Id.* at 3. This last point cannot be understated: Taylor's claim is essentially that, because he says so, Dr. Meissner is not qualified for a position nearly identical to the one she has held with the same organization for seven years. That bald assertion does not establish a prima facie case for either discrimination or retaliation.

Further, because Taylor's claims rely on his own evaluation of his qualifications, he offers no evidence to dispute that Defendant's stated reasons for hiring Dr. Meissner — that she was the best qualified candidate and the top choice of five of the six voting members on the panel — were in any way pretextual. Both of Taylor's EEO Complaints regarding his non-selection show instead that a committee of industry experts found that Dr. Meissner, who helped found and run NIH's TSRP for seven years, was still best qualified for that position after it was slightly modified.

14

As to Taylor's claim of retaliation based on his non-selection under either Title VII (Count I) or the ADEA (Count II) specifically, he asks the Court to assume, without evidence beyond his own speculation, that because he filed EEO Complaints, his supervisor, Holman, swung the votes of the hiring Committee against him in retaliation for said complaints. But the mere fact of Taylor's history of filing EEO complaints does not, without more, substantiate a retaliation claim.

Finally, Taylor's Title VII sex discrimination claim (Count III) fails for the additional reason that he has not shown that gender played any role at all in his non-selection.

### B. Taylor cannot demonstrate retaliation or discrimination based upon Dr. Hassink's promotion.

Taylor alleges that his Counts I, II, and IV should survive based on the allegations he made in EEO Complaint 5 regarding Defendant's "plan to bestow team leads with supervisory status and responsibilities," Compl. ¶ 129, which culminated in Defendant promoting Dr. Hassink. Taylor does not state a claim based upon these allegations, and indeed the factual record clearly undercuts his position.

Taylor's claim regarding Dr. Hassink is essentially that Defendant was planning to reduce the number of Taylor's *direct* reports. Compl. ¶ 129. But witness testimony shows that Defendant was reorganizing all branches in the Office of Science to create more supervisory roles and to accommodate an increase in total staff. *See* ECF No. 18-21. As a result, the team leader position that was directly beneath Taylor was eliminated to create an additional level of supervisors *who would then report to Taylor. See id.* In effect, Taylor's claim rests on the doubtful proposition that positioning him to manage two or three supervisors who in turn manage twenty staff would be a demotion from his responsibility for directly managing a staff of ten to twelve.

15

Moreover, Taylor does not plead any facts that demonstrate a causal link between his age and Defendant's decision to promote Hassink or to give Hassink some supervisory duties. *See* ECF 18-21. The record shows that Defendant promoted Hassink as part of an agency-wide conversion of team leaders into supervisory positions in order to accommodate an increase in staff, not as part of a targeted plan to strip Taylor of supervisory responsibilities. *See id.* As a result, Taylor has failed to identify a cognizable adverse action, failed to connect any adverse action to his age or to show that younger coworkers were treated more favorably, and failed to show that Defendant's wholesale organizational restructure of the Office of Science was pretextual to discriminate against older workers or to retaliate against Taylor in particular. All three short-comings are independent grounds for the Court to grant Summary Judgment in favor of Defendant.

### C. Taylor cannot demonstrate retaliation or discrimination based on Defendant's decision to deny him compensatory time.

Taylor's allegation that Defendant denied him 1.75 hours of compensatory time does not meet the third step of the *McDonnell Douglas* framework. He has pled that the reason Defendant denied this compensatory time was because "there was a new policy involving the use of a new form." Compl. ¶ 130–133. He provides no reason to conclude that that explanation was in any way pretextual. Further, he has provided no evidence showing that Defendant's decision to deny him compensatory time was in any way linked to his protected status. Summary Judgment is thus warranted as to Taylor's claims regarding compensatory time.

### D. Taylor cannot demonstrate a hostile work environment.

Taylor argues that the actions he described in his EEO complaints combine to sustain his two hostile work environment claims (Counts V & VI). But, as explained above, he has

presented no direct or indirect evidence of retaliatory or discriminatory animus, such that his claims may only proceed under the *McDonnell Douglas* framework.

Also, as discussed above, any claim regarding the previously discussed actions in EEO Complaints 3, 4, and 5 fails at step three. Taylor has failed to show that the non-discriminatory explanations Defendant provided as to why it selected Dr. Meissner to be TSRP Director and why Hassink was promoted were in any way pretextual for discrimination.

Nor can the remaining actions contained in Taylor's EEO Complaints 1, 2, or 3 sustain a cause of action. His allegations describe no more than a pattern of disagreements with colleagues and petty grievances that falls well short of the "severe or pervasive" requirement Taylor must establish. *See Berger*, 2022 WL 2116867 at *3. His claims that he received a slightly lower score on his one review than he had received the previous year, or that he was assigned work that he believes was excessive, was excluded from meetings, and that some colleagues referred to him as "the Grinch himself," are all matters that fall squarely within "personnel decisions or disagreements with management," *Hemphill*, 2014 WL 1248296, at *14, and are all "ordinary tribulations of the workplace" that do not constitute a hostile work environment, *Laurent-Workman*, 54 F.4th at 217–18 (internal quotation marks and citations omitted).

In sum, Taylor has failed to tie any of Defendant's actions to his age, sex, or other protected status. His long history of filing EEO complaints does not suffice to establish that each disappointment he may have felt, separately or collectively, came in retaliation for his decisions to report what he perceived as continuing acts of injustice.

17

## VII. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Or, In the Alternative, Motion for Summary Judgment, treated as a Motion for Summary Judgment, is **GRANTED**.

Specifically, the Motion for Summary Judgment is **GRANTED** and the Motion to Dismiss is **MOOT**.

Final Judgment will be **ENTERED** in favor of Defendant and against Plaintiff.

A separate order will **ISSUE**.

Date: November 22, 2023

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**